# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | |
|---|---|
| JOHN DOE, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br>  v.<br><br>SARAH BUSH LINCOLN HEALTH CENTER,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)   Case No. 23-CV-2170<br>)<br>)<br>)<br>)<br>) |

## ORDER

Plaintiff, John Doe, on behalf of himself and all others similarly situated, filed a Class Action Complaint in the Circuit Court of Coles County, Illinois, on June 27, 2023. On August 7, 2023, Defendant, Sarah Bush Lincoln Health Center, filed a Notice of Removal (#1) to this court, citing as the basis for removal federal officer removal pursuant to 28 U.S.C. § 1442(a)(1). On September 6, 2023, Plaintiff filed a Motion to Remand (#9). Defendant filed a Response (#12) on October 4, 2023, to which Plaintiff filed a Reply (#14) on October 18, 2023. For the following reasons, Plaintiff's Motion to Remand (#9) is GRANTED and this case is remanded to state court.

## BACKGROUND

The background in this case, up to Defendant's removal of this action to federal court, is taken from Plaintiff's state court Complaint, attached to the Notice of Removal, and the attachments to Defendant's Response to Plaintiff's Motion to Remand. Because the parties do not contest the accuracy of the factual assertions in each other's filings,

but only the legal sufficiency thereof for removal purposes, the court will accept the factual assertions as true for the purposes of this Order.  See *Schumacher v. Sterigenics U.S., LLC,* 394 F.Supp.3d 837, 839-40 (N.D. Ill. 2019).

*Plaintiff's Complaint*

Defendant is a private, nonprofit hospital and regional healthcare network based in Coles County, Illinois.  It is a general hospital and surgery center that provides inpatient, outpatient, and emergency room services to the region's patients, including Medicare and Medicaid recipients.  It serves many of its patients via its online platforms, which it encourages patients to use to find healthcare services and providers, access information about specific health conditions, sign up for classes and events, access its billing and patient record portals, and more.

To increase the success of its advertising and marketing sales, Defendant purposefully installed the Meta[1] Pixel and trackers onto its website and online platforms.  In doing so, Defendant shared patients' private and protected communications, including those containing Plaintiff's private information, with Facebook and other third parties.  Meta Pixel is a tool that tracks people and type of actions they take.  When a user accesses a web page that is hosting the Meta Pixel, the communications with the host webpage are instantaneously and surreptitiously duplicated and sent to Facebook, traveling from the user's browser to Facebook's

---

[1]Meta is the social media corporation and platform formerly known as "Facebook."  The two names may be used interchangeably throughout this Order.

server.  Meta Pixel's primary purposes are marketing, ad targeting, and sales generation.  Defendant employed Meta Pixel to intercept, duplicate, and redirect Plaintiff's private information to Facebook contemporaneously, invisibly, and without his knowledge.

Plaintiff has been a patient of Defendant for at least 15 years.  He received healthcare services from Defendant and physicians in Defendant's network, and he relied on Defendant's online platforms to communicate confidential patient information.  He last used Defendant's website in early 2022, when he used it to search for a doctor to treat his back pain.  After Plaintiff used the online platforms, advertisements for back surgery began appearing in his Facebook feed.  Plaintiff would use the online platforms about two times a month, and would use them to find doctors and treatment facilities.  By use of Meta Pixel and tracking technology, Defendant sent Plaintiff's private information to Facebook and possibly others when he used Defendant's online platforms to communicate healthcare and identifying information to Defendant.

Plaintiff's Complaint contains seven Illinois state counts: (1) negligence; (2) negligence per se; (3) invasion of privacy; (4) breach of implied contract; (5) unjust enrichment; (6) breach of fiduciary duty; and (7) violation of the Illinois Consumer Fraud and Deceptive Practices Act (815 Ill. Comp. Stat. 505/1, et seq.).

*Defendant's Facts in Support of Federal Officer Removal Jurisdiction*

In 2011 the federal government identified as a problem the fact that only seven percent of Americans had a website to access their health information online.  To that end, the Office of the National Coordinator for Health Information Technology's

3

strategic plan concluded that "the government will need help to change these dynamics." The U.S. Department of Health and Human Services then published a rule for the Electronic Health Record ("EHR") Incentive Program via which the federal government would pay healthcare providers to provide electronic access to patient healthcare information online though part of a broader federal health information technology initiative called the Meaningful Use Program. The rule stated that "Certified EHR technology used in a meaningful way is one piece of a broader HIT [health information technology] infrastructure needed to reform the health care system and improve health care quality, efficiency, and patient safety."

One important piece of the Meaningful Use Program's requirements became the ability for patients to access their healthcare records online. See 42 C.F.R. § 495.20(f)(12)(i)(B). The regulations required healthcare providers to report to the Office of the National Coordinator on their progress with respect to online access to healthcare records. To meet this criteria, the government encouraged healthcare providers to make online patient portals available to their patients, advising them, in a document entitled "How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use" issued by the "National Learning Consortium" from the Office of the National Coordinator, to "integrate a patient portal effectively into your practice operations." The government recommended healthcare providers: (1) learn the benefits of patient portals for patients and providers; (2) understand how a patient portal helps achieve Meaningful Use requirements; (3) implement proactive, engaging portal features; (4) implement the portal with a systemic process; and (5) actively promote and facilitate portal use.

4

Defendant made an online patient portal available to its patients in 2013.  Per the declaration of Brian Murphy, Defendant's vice president of information systems, Defendant selected and made the patient portal available online in direct response to the federal government's Meaningful Use Program.

ANALYSIS

Plaintiff argues that this case should be remanded back to state court because "there is simply no federal hook to bring this case within this court's subject matter jurisdiction."  Plaintiff argues that Defendant has aggrandized its role in a federal incentives program "to create the illusion of federal officer status," as it has made no factual showing that it assisted or helped to carry out the tasks or duties of a federal superior.  Plaintiff argues Defendant was not hired or enlisted by the federal government to perform a particular function, and its actions were not taken pursuant to any federal program.  Plaintiff further argues that Defendant raises no colorable federal defense.  Plaintiff seeks fees incurred from the removal pursuant to 28 U.S.C. § 1447(c).

Defendant responds that it meets all the requirements of the statute to qualify for federal officer status.  Defendant argues that it was a person under the statute, and that it acted under color of federal law in creating the patient portal and making it available to its patients and their caretakers.  Defendant cites the goal of the federal government to have healthcare providers make health information immediately available to patients online, and how, to accomplish this goal, "Congress earmarked billions of dollars for healthcare providers who participated in the Meaningful Use Program through the federal Medicare and Medicaid programs."  Defendant assisted in this effort by making the patient portal available to its patients online.  In exchange for doing so, Defendant

5

received payments directly from the federal government for providing this online access, and now avoids federal financial penalties. Defendant also made annual reports to the federal government regarding the portal. Defendant argues that it now faces state law liability for action it took under color of federal law. It was not merely complying with federal law in creating the patient portal, it was assisting the federal government in a basic federal governmental task. Defendant argues that it has colorable federal defenses to Plaintiff's state law claims, based on the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the First Amendment.

*Federal Officer Removal*

Defendant has removed this case to federal court pursuant to "federal officer removal" under 28 U.S.C. § 1442(a)(1), "which permits the removal of cases in which a federal agency or officer, or 'any person acting under that officer', is a defendant." *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1212 (7th Cir. 2022). "Federal officer removal is appropriate when 'the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense.'" *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020), quoting *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018). A party seeking removal must satisfy all four requirements of § 1442(a)(1) to remove the case to federal court. *Totten v. Crane Co.*, 2014 WL 1689689, at *3 (N.D. Ill. Apr. 28, 2014). The party seeking removal bears the burden of establishing federal jurisdiction, and the U.S. Supreme Court "has made clear that courts must liberally construe § 1442(a)." *Betzner*, 910 F.3d at 1014.

1.      Whether Defendant is a Person Within the Meaning of § 1442(a)(1)

The parties do not dispute that Defendant is a "person" within the meaning of the statute, and therefore Defendant has satisfied this first requirement.

2.      Whether Defendant is Acting Under the Federal Government, its Agencies, or its Officers

"'The relevant relationship,' the Supreme Court has reminded us, 'is that of a private person acting under a federal officer or agency.'" *Baker*, 962 F.3d at 942, quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007) (cleaned up). Typically, that relationship involves subjection, guidance, or control, and the private person's "acting under" must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior. *Baker*, 962 F.3d at 942, citing *Watson*, 551 U.S. at 151–52. "But 'the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law.'" *Baker*, 962 F.3d at 942, quoting *Watson*, 551 U.S. at 152 (emphasis in *Watson*).

The central U.S. Supreme Court decision on this issue is *Watson*, which was discussed at length by the Seventh Circuit in *Baker*. "In *Watson*, the Supreme Court explained that 'a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or non-compliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored.'" *Baker*, 962 F.3d at 942, quoting *Watson*, 551 U.S. at 153. Private actors have been found to be "acting under" the government where the private actor "helps 'the Government to produce an item that it needs[,]'" because then "'[t]he assistance that

7

private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks.'" *Baker*, 962 F.3d at 942, quoting *Watson*, 551 U.S. at 153. In *Watson*, the Supreme Court cited with approval a case where the court found that "the private firm had 'fulfilled the terms of a contractual agreement by providing the Government with a product that it used to help conduct a war[,]'" and thus "the company 'performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform.'" *Baker*, 962 F.3d at 942, quoting *Watson*, 551 U.S. at 153-54.

In *Baker* itself, the Seventh Circuit concluded that the private actor defendant worked "hand-in-hand with the federal government to achieve a task that furthers an end of the federal government[,]" as the "government's detailed specifications for the makeup of ISR's materials, 'the compulsion to provide the product to the government's specifications,' and the continuous federal supervision all reveal the necessary relationship between ISR and the government[,]" and, accordingly, the private actor defendant "acted under federal authority." *Baker*, 962 F.3d at 942-43, quoting *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 400 (5th Cir. 1998).

In this case, Defendant claims to have been acting under the government in creating the patient portal, assisting the government in pursuit of its goal to have healthcare providers make health information immediately available to patients online. A number of district courts have already considered whether a private actor may remove an action to federal court on this basis pursuant to federal officer removal under 28 U.S.C. § 1442(a)(1). Both parties acknowledge that the first two courts to consider the issue under the same basic facts as this case found that federal officer

removal was appropriate.  See Plaintiff's Memorandum in Support of Motion to

Remand (#10), at p. 12 n.1, and Defendant's Response (#12), at p. 12, citing *Doe v.*

*UPMC*, 2020 WL 4381675 (W.D. Pa. July 31, 2020), and *Doe v. ProMedica Health System,*

*Inc.*, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020).  However, both parties also

acknowledge that, since that time, "the tide has turned decidedly in the other

direction," and most cases have now concluded that there is no basis for federal officer

removal under these facts.  See Defendant's Response (#12), at p. 12, and Plaintiff's

Memorandum in Support of Motion to Remand (#10), at p. 11, citing *Doe v. BJC Health*

*System*, 2023 WL 369427 (E.D. Mo. Jan. 10, 2023); *Heard v. Torrance Memorial Medical*

*Center*, 2023 WL 2475544 (C.D. Cal. Mar. 13, 2023); *Doe v. Torrance Memorial Medical*

*Center*, 2023 WL 2916548 (C.D. Cal. Apr. 12, 2023); *Quinto v. Regents of the University of*

*California* 2023 WL 1448050 (N.D. Cal. Feb. 1, 2023); *Mohr v. Trustees of the University of*

*Pennsylvania*, 2023 WL 3044594 (E.D. Pa. Apr. 20, 2023); *Browne v. Cedars-Sinai Health*

*System*, 2023 WL 3095551 (C.D. Cal. Apr. 26, 2023); *Doe v. Hoag Memorial Presbyterian*

*Hospital*, 2023 WL 3197716 (C.D. Cal. May 2, 2023); *Martin v. LCMC Health Holdings, Inc.*,

2023 WL 4540547 (E.D. La. July 5, 2023); *Progin v. UMass Memorial Hospital*, 2023 WL

4535129 (D. Mass. July 13, 2023); *Doe v. SSM Health Care Corp.*, 2023 WL 5662099 (E.D.

Mo. Aug. 22, 2023); and *Doe v. Mosaic Health System*, 2023 WL 5125078 (W.D. Mo. July

20, 2023).

　　　The court acknowledges that, in determining a matter of law, the fact that a

majority of courts to consider an issue has decided it one way does not bind this court

to follow those decisions.  Absent a binding decision from the U.S. Supreme Court or

the Seventh Circuit, this court must make its own determination based on its

interpretation of the applicable law.  However, having reviewed the various district court decisions to consider this issue, the court finds the majority line of cases to be better reasoned and more persuasive.

The court finds instructive a recent decision from a court in this circuit addressing a case with facts nearly identical to those present here.  In *Lamarr v. Goshen Health System, Inc.*, 2023 WL 6690582 (S.D. Ind. Oct. 12, 2023), the plaintiff alleged that a website-tracking "pixel" embedded in the defendant hospital's patient portal shared her health data without her consent.  The defendant removed the case to federal court under the federal officer removal statute, arguing that "it 'act[ed] under' a subdivision of the U.S. Department of Health and Human Services by creating an online patient portal that satisfied the criteria for Medicare incentive payments."  *Lamarr*, 2023 WL 6690582, at *1.

The district court began its analysis by noting that *Watson* held that "mere compliance with federal law and regulation is not 'acting under' a federal official[,]"and "that a private contractor might be 'acting under' the federal government when it 'is helping the Government to produce an item that it needs.'"  *Lamarr*, 2023 WL 6690582, at *2, quoting *Watson*, 551 U.S. at 153.  The court then discussed the relevant Seventh Circuit cases, where the court of appeals found private actors were "acting under" federal officers when they: produced turbines for an aircraft carrier according to government specifications (*Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012)); contracted to manufacture heavy bomber aircraft for the United States Air Force (*Betzner*); and were a wartime manufacturer of raw materials for the federal government (*Baker*).  *Lamarr*, 2023 WL 6690582, at *2.

10

Thus, the *Lamarr* court concluded, "[a]t least in some cases, then—in particular, those where a wartime manufacturer is making goods under contract for the U.S. government—'private contractors performing tasks for the government are sometimes covered under section 1442.'"  *Lamarr*, 2023 WL 6690582, at *2, quoting *Panther Brands, LLC v. Indy Racing League, LLC*, 827 F.3d 586, 590 (7th Cir. 2016).  But, the court found, "it is possible to 'take this idea too far[,]'" as "[o]nly those contractor relationships that are 'closely monitored and highly regulated' satisfy the 'acting under' requirement." *Lamarr*, 2023 WL 6690582, at *2, quoting *Panther Brands*, 827 F.3d at 590.  The court cited to *Watson*'s dicta "that though a 'federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail,' that relationship does not mean the company 'acts under' the agency."  *Lamarr*, 2023 WL 6690582, at *2, quoting *Watson*, 551 U.S. at 145.  The court then cited to *Martin*, where the Seventh Circuit held that a nursing home seeking Medicare reimbursement fell "into the highly-regulated-but-not-acting-under category."  *Lamarr*, 2023 WL 6690582, at *2.

The court concluded that the defendant hospital was "more like the nursing home in *Martin* than like the wartime contractors in *Ruppel*, *Betzner*, and *Baker*[,]" because its patient portal is not something the government "needs,"nor is the maintenance of electronic health records a "basic governmental task."  *Lamarr*, 2023 WL 6690582, at *2.  Rather, the defendant was "exactly what it looks like: a private hospital[,] [a]nd '[p]rivate firms retain their private character even when many aspects of their conduct are controlled by federal statutes and rules.'" *Lamarr*, 2023 WL 6690582, at *2, quoting *Martin*, 37 F.4th at 1213.  Because the defendant was not "acting under"

the Department of Health and Human Services by maintaining its patient portal, the court held that federal officer removal was not appropriate under 28 U.S.C. § 1442(a)(1). *Lamarr*, 2023 WL 6690582, at *3.

Turning to the instant case, Defendant does not produce a product that the government needs, nor is it otherwise fulfilling a basic governmental task. See *Progin*, 2023 WL 4535129, at *4. Although the Office of the National Coordinator "has an obligation to 'develop, maintain, and direct the implementation of a strategic plan to guide the nationwide implementation of interoperable health information technology,' participation in the Meaningful Use Program serves broad federal goals, not basic government functions[.]" *Progin*, 2023 WL 4535129, at *4 (internal citation omitted). The federal government does not have an obligation to create a health information infrastructure and, if hospital systems like Defendant chose not to maintain patient portals, like the patient portal at issue here, the government would not be required to create its own. See *Progin*, 2023 WL 4535129, at *4.

Additionally, although Defendant submits reports to the government and "answered" the government's "call for federal assistance" in creating the patient portal, Defendant has not shown that the federal government exercised the type of tight control that would bring Defendant's conduct within the scope of the statute. See *Progin*, 2023 WL 4535129, at *4. Further, the court finds there has been no formal delegation of any of the federal government's duties to Defendant. See *Progin*, 2023 WL 4535129, at *4, comparing *Watson*, 551 U.S. at 156 (finding that the FTC's provision of testing specifications, inspection and supervision of the testing laboratories, and prohibition of statements in advertising were merely regulations that did not constitute

12

formal delegation), with *Camacho v. Autoridad de Telefonos de P.R.*, 868 F.2d 482, 486 (1st Cir. 1989) (finding that defendants were acting under the authority of the federal government because they "were acting under express orders, control and directions of federal officers" when wiretapping).

The court finds the two earlier cases in which the courts found federal officer removal appropriate, *UPMC* and *ProMedica,* to be unpersuasive.  The court in *SSM Health*, one of the many cases rejecting federal officer removal in this context, noted that the court in the first case, *UPMC*, improperly applied *Watson*'s standards because the facts in that case did "not independently prove any kind of 'special relationship' between participants in the MUP [Meaningful Use Program] and the federal government."  *SSM Health*, 2023 WL 5662099, at *5, citing *Watson*, 551 U.S. at 157.  The court further found that the *UPMC* court did "not supply any substantive analysis of whether the MUP implicates a basic government function or whether federal officers act as the superiors of participants in the MUP[,]" and thus the court did "not find this case persuasive."  *SSM Health*, 2023 WL 5662099, at *5.

The *SSM Health* court then addressed the second case, *ProMedica*, likewise finding it unpersuasive, because, while the court found the term "acting under" to be broad and liberally construed, the court did "not explain why participation in the MUP might amount to the sort of 'special relationship' necessary for federal officer removal[,]" and the court did "not further state why participation in the MUP qualifies as acting under a federal official."  *SSM Health*, 2023 WL 5662099, at *5, citing *ProMedica*, 2020 WL 7705627, at *2.  The *SSM Health* court also noted that, while the *ProMedica* court acknowledged that "*Watson*'s finding that the term 'acting under' typically connotes

'subjection, guidance, or control' to 'one holding a superior office[,]'" it never applied that test to the case before it.  *SSM Health*, 2023 WL 5662099, at *5, quoting *ProMedica*, 2020 WL 7705627, at *2.  The *SSM Health* court also found that the *ProMedica* court did "not address whether participation in the MUP would support a federal officer in a basic government function."  *SSM Health*, 2023 WL 5662099, at *5.

For the same reasons stated by the court in *SSM Health*, the court finds the decisions in *UPMC* and *ProMedica* to be unpersuasive, and will not follow them.

As the court in *Mohr* stated, "Defendant does not fit into the 'basic' scenario contemplated by the statute where a federal official enforces federal law, nor can Defendant be properly categorized as enjoying a 'special relationship' with the federal government like that of government contractors[.]" *Mohr*, 2023 WL 3044594, at *5. "Instead, Defendant is simply a private entity that voluntarily elects to engage in a federal incentive program for financial gain[,]" which "does not fall within even the broadest interpretation of the federal official removal statute." *Mohr*, 2023 WL 3044594, at *5.  In sum, although Defendant's conduct may assist the federal government in achieving a broad goal, the court finds that its participation in the Meaningful Use Program is merely compliance with federal law and is not sufficient to bring it within the scope of the federal officer statute.  See *Progin*, 2023 WL 4535129, at *5.

Like the court in *Lamarr*, this court finds that Defendant's patient portal is not something the government "needs," nor is it a "basic governmental task."  See *Lamarr*, 2023 WL 6690582, at *2.  Defendant is a private hospital, and retains its private character even if this aspect of its conduct has been influenced by federal statutes, rules, or regulations.  See *Lamarr*, 2023 WL 6690582, at *2, citing *Martin*, 37 F.4th at 1213.

Because Defendant is not "acting under" the government by maintaining its patient portal, federal officer removal is not appropriate under 28 U.S.C. § 1442(a)(1). The court need not address the other elements of the statutory test. See *Lamarr*, 2023 WL 6690582, at *3. Plaintiff's Motion to Remand is therefore GRANTED.

*Attorney Fees*

Plaintiff has also asked this court to award attorney fees pursuant to 28 U.S.C. § 1447(c) for frivolous removal, arguing that Defendant's removal lacked an objectively reasonable basis. This court has the authority to award Plaintiff attorney fees for prevailing on his Motion to Remand, but "such an award is only appropriate where 'clearly established law' demonstrates there was no basis for removal." *Lamarr*, 2023 WL 6690582, at *3, citing *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007). The court agrees with the conclusion reached by the court in *Lamarr* that Defendant's federal officer argument, while not successful, was at least colorable in light of the Seventh Circuit's military contractor cases, and so the court declines to award attorney fees. See *Lamarr*, 2023 WL 6690582, at *3.

IT IS THEREFORE ORDERED:

(1)     Plaintiff's Motion to Remand (#9) is GRANTED. This action is REMANDED to the Circuit Court of the First Judicial Circuit of Coles County, Illinois, for lack of subject matter jurisdiction.

(2)     This case is terminated.


ENTERED this 13th day of November, 2023.


s/ COLIN S. BRUCE
U.S. DISTRICT JUDGE